UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH J. GRISHAM,

               Petitioner,

v.                                          Case No. 13-14043

JEFFREY LARSON,                             HON. TERRENCE G. BERG
                                            HON. R. STEVEN WHALEN

               Respondent.
_____/

**OPINION AND ORDER
SUMMARILY DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY
<u>OR LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

Petitioner Keith J. Grisham, who is presently incarcerated in the Central Michigan Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his sentences for: larceny in a building, Michigan Compiled Laws § 750.360; resisting and obstructing a police officer causing injury, Michigan Compiled Laws § 750.81d(2); and being a fourth-felony habitual offender, Michigan Compiled Laws § 769.12. For the reasons stated below, the petition for writ of habeas corpus is summarily DENIED WITH PREJUDICE.

        **I.     FACTUAL BACKGROUND**

Petitioner was convicted of the above offenses by a jury in the Muskegon County Circuit Court. The relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review, are recounted verbatim below. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

Defendant's convictions arise from the theft of rings and cash from the Muskegon Art Museum in July 2007.

Detective Timothy Denger testified that he was an officer assigned to road patrol on the night at issue. Denger said he was dressed in his full uniform and drove a fully marked police car. Denger had just started his shift when he was dispatched along with officer Chad Hoop to the museum to investigate an alarm. Denger parked on the north side and he and Hoop proceeded to check the windows and doors.

Denger testified that they did not discover any problems with the windows and doors on the north side and so they began to circle around the west side of the building to get to the south side. Hoop testified that there was a fence on the west side of the building and that Denger got over the fence more easily and moved on ahead. Denger stated that, after he came around the corner, he saw defendant on the sidewalk near the museum. Denger testified that defendant was dressed in black.

Denger then approached defendant because he wanted to ask him if he had seen anything unusual, but defendant began to cross the street. Denger stated that defendant crossed the street and began to walk along the building on the other side. Denger stated that he thought defendant was "hugging" the side of the building and that defendant's actions overall seemed unusual. After he got to the end of the same building, Denger called out to defendant and asked him: "will you stop for a second?" Denger testified that defendant turned to look over his shoulder and then "jetted." At this, Denger yelled, "Stop. Police."

Hoop testified that he continued to check the exterior of the museum as Denger crossed the street. He stated that he turned toward Denger when he heard him yell: "Stop. Police." Hoop said he saw Denger running after defendant.

Denger testified that he chased defendant for some distance when officer Thomas Parker pulled up in his car and cut defendant off. At this point, Denger pushed defendant from behind and they both fell. Defendant began to get up, but was arrested by Parker. Parker testified that Denger seemed a bit odd: "like he didn't really know what was going on." Denger had a cut on his hand and also began to complain of a pulled groin. Later testimony established that Denger went to the hospital for treatment and that his treating physician recommended that he be scanned for a possible concussion.

2

> After arresting defendant, Parker searched his front pockets and found $18 in cash and a bundle of rings. The rings had price tags and strings tied to them. The officers then went back to the museum. Denger stated that they proceeded to the door near the sidewalk where he first observed defendant. Denger stated that they observed a ballpeen [sic] hammer in the bushes about ten to thirteen feet from the fire door, which was slightly ajar. After entering the museum, Denger said he discovered a donation box near the north entrance to the museum that had been broken. Denger said that the box did not have any cash—only change. Denger also testified that the cash drawer in the gift shop had been damaged, but was not open. Denger stated that the cash drawer had little circle-shaped indentations on the front and near the lock. Denger also stated that there was a ring box in the shop with rings that had tags and strings similar to those found on defendant.
>
> Testimony established that the rings found on defendant came from the museum's gift shop. In addition, a museum staff person testified that the ballpeen [sic] hammer was from the shop and was used to hang pictures. Further testimony established that two fingerprints found on the cash drawer in the gift shop were from defendant.
>
> Defendant testified that he had never been in the museum and that he found the rings near the museum while walking. He further testified that he did not know that Denger was an officer and that he only ran because he was startled when Denger called out to him.

*People v. Grisham,* No. 286836, 2009 WL 3288523, *1–2 (Mich. Ct. App. Oct. 13, 2009).

Following his conviction, Petitioner was sentenced as a fourth-felony habitual offender to serve forty-six months to fifteen years in prison for his conviction of larceny in a building, and to fifty-eight months to fifteen years in prison for resisting and obstructing a police officer causing injury. The judge ordered Petitioner to serve his sentences consecutively. *Id.* at *1. Petitioner's conviction was affirmed on appeal, *id.*, and his leave to appeal to the Michigan Supreme Court was

rejected as being untimely filed.[1]

Petitioner then filed a motion to correct sentence under Michigan Court Rule 6.429, which was denied without prejudice to Petitioner filing his motion as a motion for relief from judgment under Michigan Court Rule subchapter 6.500. *People v. Grisham,* No. 07-55258-FH (Muskegon Cnty. Cir. Ct., Sept. 19, 2011).

Petitioner then filed an appeal with the Michigan Court of Appeals. The Michigan Court of Appeals denied relief under Michigan Court Rule 6.508(D). *People v. Grisham*, No. 306966 (Mich. Ct. App. Feb. 22, 2012). The Michigan Supreme Court denied Petitioner leave to appeal because that court "was not persuaded that the question presented should be reviewed by this Court." *People v. Grisham*, 820 N.W.2d 802 (2012).

Petitioner seeks a writ of habeas corpus because, he alleges, the trial court violated the Due Process clauses of both the Michigan and United States Constitutions when it ordered him to serve consecutive sentences that were based on false information.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Letter from Inger Z. Meyer, Deputy Clerk of the Michigan Supreme Court, dated December 9, 2009 (attached as exhibit to the petition for writ of habeas corpus).

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997) and *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief

5

does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision . . . and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

In addition, a petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law or it may summarily be dismissed. *See Perez v. Hemingway,* 157 F. Supp. 2d 790, 796 (E.D. Mich. 2001). Federal courts are also authorized to dismiss any habeas petition that appears legally insufficient on its face. *See McFarland v. Scott,* 512 U.S. 849, 856 (1994). A federal district court is authorized to summarily dismiss a habeas corpus petition if it plainly appears from the face of the petition or the exhibits that are attached to it that the petitioner is not entitled to federal habeas relief. *See Carson v. Burke,* 178 F.3d 434, 436 (6th Cir. 1999); Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254.

The Sixth Circuit has indicated that it "disapprove[s of] the practice of issuing a show cause order [to the respondent] until after the District Court first has made a careful examination of the petition." *Allen v. Perini,* 424 F.2d 134, 140 (6th Cir. 1970). A district court therefore has the duty to screen out any habeas corpus petition that lacks merit on its face. *Id.* at 141. No return to a habeas petition is necessary when the petition is frivolous, or obviously lacks merit, or where the necessary facts can be determined from the petition itself without consideration of a

return by the state. *Id.*

After undertaking the review required by Rule 4, this Court concludes, for the reasons stated in greater detail below, that Petitioner's claim does not entitle him to habeas relief, and the petition must be summarily denied. *See McIntosh v. Booker,* 300 F. Supp. 2d 498, 499 (E.D. Mich. 2004).

### III.   ANALYSIS

In his sole claim for relief, Petitioner alleges that the trial judge relied on false information in imposing consecutive sentences.[2] Petitioner claims that the prosecutor falsely stated at sentencing that Petitioner: (1) had been fighting with the police at the time of his arrest; and (2) was on probation for another resisting

---

[2] The transcript of the sentencing proceeding attached by Petitioner contains the following statement by the prosecutor: "The concern I have is that this Defendant is escalating his behavior. Even while he's on probation for the B&E and another R&O and a larceny under 200, he's continuing to fight with the police." (Tr. at 12.) The prosecutor then asked the court to impose consecutive sentences. Petitioner claims that these comments presented false information to the court. With respect to the phrase "continues to fight with the police," while the underlying facts of the R&O conviction do not involve a "fight with police" per se, they do involve a chase that ended up causing the officer to be injured. Under these circumstances, for the prosecutor to characterize the conduct as fighting with the police is more akin to an exaggeration than to "false information." The sentencing court, familiar with the actual facts, would unlikely have been influenced by the prosecutor's characterization of the offense. Regarding the prosecutor's reference to petitioner's criminal history, a review of the Presentence Investigation Report, attached as an exhibit to the petition, shows that Petitioner was previously convicted of "Breaking and Entering a Building with Intent" and "Checks w/o Account or w/o Suff Funds" and sentenced to a two-year term of probation on March 13, 2007. The offense date was July 31, 2007, so it was not incorrect for the prosecutor to point out that petitioner was on probation at the time he committed the offense of conviction "for a B&E." The Criminal Information for the offense of conviction contains a "Habitual Offender – Fourth Offense Notice," which lists both the B&E and the No Account Check convictions from March 2007, as well as a conviction for "Resisting and Obstructing" on or about December 5, 2006. The Court does not find any record in the pleadings showing what sentence petitioner received for the December 5, 2006 conviction for R&O, so it cannot conclude one way or the other whether the prosecutor was mistaken when he said that petitioner was "on probation for another . . . R&O." On these facts, however, even if the statement was incorrect, it is a minor discrepancy. The statement was correct that petitioner had a prior R&O, and that he was on probation. It is not clear whether he was on probation for the R&O offense, or only for the B&E/No Account Check offenses, at the time he committed the new offense. In any event, petitioner fails to present any evidence that this alleged error had any effect on the court's decision to impose consecutive sentences.

and obstructing a police officer conviction and a larceny conviction at the time of his arrest on the current charges.

As an initial matter, the state trial court's imposition of a consecutive sentence, by itself, would not entitle petitioner to habeas relief. Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Moreover, petitioner is not entitled to habeas relief on his claim that the judge used inaccurate information in imposing sentence. A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948) (stating that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct, violates due process of law). To prevail on a claim that the trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied on this information and that it was materially false. *See Collins v. Buchkoe*, 493 F.2d 343, 345–46 (6th Cir. 1974); *Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999). Where a petitioner fails to demonstrate in his or her petition that the sentencing court relied upon materially false information in imposing the sentence, the claim is without merit. *See Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

The Court has reviewed the portion of the sentencing transcript that Petitioner attached to his petition. At sentencing, Petitioner denied injuring the police officer and indicated that the officer had testified at trial that Petitioner was not responsible for the injury. The trial court, in imposing sentence, did not mention that Petitioner had fought with the police officer or that the current offenses had been committed while Petitioner was on probation.

Moreover, in reviewing the proportionate sentencing claim that petitioner raised on direct appeal, the Michigan Court of Appeals determined that the trial judge had not relied on inaccurate information in sentencing petitioner. *People v. Grisham,* No. 286836, 2009 WL 3288523, *4 (Mich. Ct. App. Oct. 13, 2009). The Michigan Court of Appeals also concluded that the sentences imposed were proportionate, in part, because petitioner had "committed the present felonies while on probation." *Id.* The Michigan Court of Appeals further noted that "the escalating nature of defendant's criminal actions supported the maximum term selected by the trial court." *Id.*

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *See Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). The presumption of correctness given to the findings of a state court on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *See Sumner v. Mata,* 449 U.S. 539, 546–47 (1981). Petitioner has failed to offer any clear and convincing evidence to

rebut the factual determination of the Court of Appeals that the trial judge did not rely on inaccurate information in imposing sentence. Moreover, the appellate court's factual finding that Petitioner was on probation when he committed the current offenses suggests that the prosecutor's comments at sentencing that petitioner had been on probation when he committed the larceny and resisting arrest charges were accurate.

In the present case, Petitioner has failed to present any information to either the state courts or to this Court to establish that the trial judge relied on the prosecutor's allegedly false comments at sentencing when he decided to impose consecutive sentences. Because Petitioner has failed to show that the factors considered by the trial court at sentencing were materially false or improperly considered, he is not entitled to habeas relief on this claim. *See Barber v. Birkett*, 276 F. Supp. 2d 700, 714 (E.D. Mich. 2003).

Finally, to the extent that Petitioner asks this Court to order that his presentence report be corrected, he is not entitled to habeas relief. There is no federal constitutional right to a presentence investigation and report. *See Bridinger,* 429 F. Supp. 2d at 909; *Allen v. Stovall,* 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). Therefore, the mere presence of hearsay or inaccurate information in a presentence report does not constitute a denial of due process so as to entitle a petitioner to habeas relief. *See Allen,* 156 F. Supp. 2d at 797. Petitioner is not entitled to relief on his claim.

## IV. CONCLUSION

The Court will summarily deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For these reasons, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). Indeed, it would be a "rare case" in which a district judge issues a habeas petitioner a certificate of appealability to appeal after he dismisses a habeas petition without requiring an answer because it plainly appeared from the face of the petition and any exhibits annexed to it that the petitioner was not entitled to


habeas relief. *See, e.g., Alexander v. Harris,* 595 F.2d 87, 91 (2nd Cir. 1979); *Myers v. Ludwick*, No. 09-CV-14610, 2009 WL 4581693, *4 (E.D. Mich. Dec. 3, 2009). The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen*, 156 F. Supp. 2d at 798.

Based upon the foregoing, it is ORDERED that the Petition for a Writ of Habeas Corpus is summarily DENIED WITH PREJUDICE. It is FURTHER ORDERED that a Certificate of Appealability is DENIED. It is FURTHER ORDERED that Petitioner will be DENIED leave to appeal *in forma pauperis.*

<div style="text-align:right">s/Terrence G. Berg<br>TERRENCE G. BERG<br>UNITED STATES DISTRICT JUDGE</div>

Dated:  October 28, 2013


### Certificate of Service

I hereby certify that this Order was electronically submitted on October 28, 2013, using the CM/ECF system, which will send notification to each party.

<div style="text-align:right">By: s/A. Chubb<br>Case Manager</div>

12